# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23573-Civ-COOKE/TORRES

AH BISCAYNE INVESTOR, LLC,

      Plaintiff,

vs.

1st SUN PROPERTIES, LLC,

      Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court on 1st SUN Properties, LLC's ("Defendant") motion to compel the production of improperly redacted and withheld documents ("Motion") [D.E. 85] against AH Biscayne Investor, LLC ("Plaintiff"). Plaintiff responded to Defendant's Motion on June 2, 2017 [D.E. 89] and Defendant replied on June 5, 2017. [D.E. 91]. Therefore, this Motion is now ripe for disposition.[1] After careful consideration of the Motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

---

[1] Defendant's Motion sought an expedited briefing schedule and oral argument in light of looming depositions currently scheduled for June 13 and June 14 in New York. On May 30, 2017, the Court expedited Plaintiff's response and required Plaintiff to include sworn evidence in support of the documents that have been redacted or withheld on the basis of the attorney-client privilege.

1

## I.     BACKGROUND

This action arises out of Plaintiff's alleged breach of its obligations concerning the parties' development of a real estate project in Miami, Florida (the "Biscayne Project"). The primary issue in this action is the parties' interpretation of their obligations under a Tenancy in Common Agreement ("TIC"), a First Side Letter Amendment ("First Amendment"), and a Second Side Letter Amendment ("Second Amendment") governing the relationship between the parties and the future operations and management of the Biscayne Project. These three integrated documents collectively form the parties' entire agreement (the "Agreement"). Pursuant to the Agreement, Michael Belfonti or a Michael Belfonti affiliate[2] were entitled to exercise a call option that would allow Michael Belfonti or any Michael Belfonti affiliate to purchase additional membership interests in the Biscayne Project. The call option provided a mechanism and a deadline for the Belfonti-related entities (Defendant and Lambert Boston Associates, LLC) to acquire up to a defined percentage ownership interest, which once achieved entitled the Belfonti-related entities to share equally in all management decisions. Per the parties agreement, once Defendant or any other Michael Belfonti affiliate reached a threshold ownership amount, as defined in the TIC and amended by the First and Second Amendments, the date by which Michael Belfonti could exercise his all option

---

[2] An affiliate is a defined term in the TIC. Specifically, it means a legal entity that is controlled or is under the common control of Michael Belfonti. Defendant and Lambert Boston Associates, LLC were the two Michael Belfonti affiliates that acquired membership interests in the Biscayne Project.

2

would be extended through October 22, 2016 (the "Outside Call Option Date").

As of July 13, 2016, the Michael Belfonti affiliates (Defendant and Lambert Boston Associates, LLC) had not satisfied the defined percentage ownership interest for share management. As a result, the provisions of the Second Amendment executed by the parties on July 13, 2016 were aimed at defining the benchmarks needed to be satisfied in order to achieve the threshold ownership amount as so as to extend the Outside Call Option Date and allow Michael Belfonti and the Michael Belfonti affiliates additional time to achieve the defined percentage ownership interest for shared management. The Second Amendment provided that Defendant shall "be deemed to have satisfied" the threshold ownership amount upon certain "Required Conditions" being met and, thus, extend the Outside Call Option Date until October 22, 2016 in order to allow Michael Belfonti and his designated Michael Belfonti affiliates additional time to exercise the Call Option and achieve the defined percentage ownership interest for shared management.

There is allegedly no dispute by Plaintiff that Defendant and its affiliates "strictly satisfied" the "Required Conditions" in the Second Amendment. Nevertheless, Plaintiff purportedly refused to allow Michael Belfonti to exercise the Call Option and interfered with the ability of Michael Belfonti and his designated Michael Belfonti affiliate – the Defendant – to achieve the defined percentage ownership interest. Plaintiff's alleged refusal to allow the exercise of the call option by the extended Outside Call Option Date was purportedly an attempt to wrest

3

control of the Biscayne Project from the Michael Belfonti affiliates (Defendant and Lambert Boston Associates, LLC). Accordingly, (1) the Second Amendment, (2) the negotiations leading up to its execution, and (3) the parties' intent in entering into it are central issues in this action.

## II.    ANALYSIS

The Local Rules provide that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.*" S.D. Fla. L.R. 26.1(g)(3)(C) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any . . . production demand . . . and an answer is not provided on the basis of such assertion . . . [t]he attorney asserting the privilege shall . . . identify the nature of the privilege . . . being claimed." S.D. Fla. L.R. 26.1(g)(3)(B)(I).

The present dispute arises out of Plaintiff's privilege claims for many of its emails during the time the parties were negotiating, executing, and complying with the terms of the Second Amendment. During the early discovery phase of this action, the parties produced documents responsive to their respective requests for production that were dated during the fourteen months between July 1, 2015 and August 18, 2016. Following Defendant's initial preliminary review of Plaintiff's

4

documents, Defendant suspected that Plaintiff had redacted a disproportionate number of internal emails during the time the Second Amendment was being negotiated, and immediately thereafter, in July of 2016.[3]

Defendant's suspicions were purportedly confirmed when Defendant received Plaintiff's privilege log on May 17, 2017. Plaintiff redacted or withheld approximately 200 internal documents dated during the nearly twelve months between July 1, 2015 and July 1, 2016. This time period was significant because the parties were negotiating, and ultimately executing the 22 page TIC Agreement and its exhibits, along with the First Amendment. But for the month and a half between July 1, 2016 and August 18, 2016, the critical window during which the parties negotiated, executed, and implemented the three page Second Amendment, Plaintiff withheld or redacted approximately 640 internal documents.[4]

As such, Defendant argues that Plaintiff has improperly attempted to screen substantially all of its internal email correspondence between July 1, 2016 and August 18, 2016 from discovery on the basis of the attorney-client privilege. Other than approximately forty internal emails that discuss mundane topics, Plaintiff

---

[3] To date, Plaintiff has produced approximately 5,700 documents and Defendant has produced 5,100 documents. Relatedly, Plaintiff's privilege log contains 2,529 entries whereas Defendant's privilege log contains 980 entries.

[4] Examples of where Plaintiff has allegedly abused the use of the attorney-client privilege include where (1) Plaintiff withheld emails it exchanged with Defendant, (2) Plaintiff redacted emails that it exchanged with third-parties such as Ocean Bank, (3) Plaintiff redacted emails it exchanged with Green Taurig, who acted as joint counsel for both Plaintiff and Defendant, and (4) Plaintiff redacted emails between non-lawyers.

5

purportedly produced *no* substantive internal emails between July 1, 2016 and August 18, 2016. Defendant suggests that Plaintiff accomplished this feat by systematically copying in-house counsel on internal emails and then categorically asserting a blanket attorney-client privilege whenever an email involved in-house counsel regardless of whether the subject matter of the email was in fact related to the rendering of legal advice. This blanket assertion of the attorney-client privilege allegedly occurred even when the email was not directed to, or sent by, the in-house lawyer. Of the documents Plaintiff produced from the file of in-house corporate counsel William Connolly between July 1, 2016 and August 18, 2016, Defendant contends that only about five were unredacted internal communications. And each document was purportedly a one-sentence, entirely routine communication.

During the same period, Plaintiff allegedly also withheld from production more than 170 internal documents from Mr. Connolly's file – all on a blanket assertion of the attorney-client privilege. To remedy this problem, Defendant requests that the Court (1) conduct an *in camera* review of each communication redacted or withheld and (2) enter an order compelling the immediate production of every non-privileged withheld communication. Alternatively, Defendant requests the Court enter an order appointing a special master to conduct an *in camera* review of each document redacted or withheld and make a Report and Recommendation to this Court. Defendant also requests that the Court conduct this examination before the depositions now scheduled for the week of June 12th.

6

In response, Plaintiff argues that Defendant's motion lacks any merit because it fails to include any factual basis to challenge Plaintiff's privilege assertions. The communications at issue are apparently privileged because Mr. Connolly provided legal advice to Plaintiff concerning (1) the negotiation of the relevant agreements, (2) the parties' respective obligations under those agreements, and (3) the parties' disputes with respect to possible litigation. As such, Plaintiff claims that it reviewed all of the relevant communications involving Mr. Connolly to ensure that it redacted or withheld only those documents containing legal advice or communications made for the purpose of obtaining such advice.

The basis for Plaintiff's abundant privilege claims purportedly stems from the fact that Mr. Connolly is an in-house attorney that provides substantial legal advice concerning loan originations, asset purchases and sales, asset management activities, and collateralized debt obligation structures. [D.E. 89-2]. While Mr. Connolly provides business advice to Plaintiff on certain occasions – such as advising on the allocation of assets, the assumption of business risks, and general business affairs – his primary role as counsel to Plaintiff is to provide legal advice. More specifically, Mr. Connolly allegedly provided legal guidance to Plaintiff for more than a year concerning the parties' agreements, transactions, and disputes that are now the subject of this lawsuit. As such, Plaintiff disputes Defendant's allegations that

7

documents were withheld or redacted simply because a lawyer appeared on a communication.[5]

"The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502). The burden of establishing the privilege is on the proponent of the privilege, who must establish the existence of the privilege by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) (matters of preliminary questions, identified in FED. R. EVID. 104(a), are to be established by a "preponderance of proof," *citing Bourjaily v. United States,* 483 U.S. 171, 175–76, (1987)). While not absolute, the privilege has long been understood to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (footnote omitted).

As for the attorney-client privilege in connection with corporate entities, the Florida Supreme Court has subjected claims of privilege to a heightened level of security "to minimize the threat of corporations cloaking information with the

---

[5]   Plaintiff does not object to an *in camera* review of Defendant's privileged documents.

8

attorney-client in order to avoid discovery . . . ." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994); *see also In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5057844, at *5 (S.D. Fla. Oct. 18, 2012) ("The Florida Supreme Court has held that, unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a 'heightened level of scrutiny.'") (quoting *Southern Bell Tel. & Tel. Co.,* 632 So. 2d at 1383)); *First Chicago International v. United Exchange Co. Ltd.,* 125 F.R.D. 55, 57 (S.D.N.Y. 1989) ("Any standard developed, therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery.").[6]

Therefore, to establish that communications are protected by the attorney-client privilege, Plaintiff – as a corporate entity – must satisfy the following requirements:

> (1) the communication would not have been made but for the contemplation of legal services;
> (2) the employee making the communication did so at the direction of his or her corporate superior;
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

---

[6] Because this is a diversity action, state law governs the scope of the attorney-client privilege and the heightened level of scrutiny for a corporate entity. *See Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 696 (S.D. Fla. 2007) ("Florida law governs application of the attorney-client privilege in a federal diversity action.") (citing *Bradt v. Smith,* 634 F.2d 796, 800 (5th Cir. 1981)).

> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*S. Bell Tel. & Tel. Co.*, 632 So. 2d at 1383.

Before exploring the merits of Defendant's Motion, it is notable that for some documents there is no longer a dispute following Plaintiff's concessions. First, after Defendant filed its Motion, Plaintiff determined that forty documents were improperly withheld on its privilege log and agreed to produce those documents accordingly. Second, Plaintiff agreed to withdraw its privilege claims for documents containing communications involving Fred Weber, a licensed attorney, because those documents did not discuss legal advice from Mr. Connolly. Third, Plaintiff agreed to withdraw its privilege claims (without any explanation) with respect to ten additional documents. And fourth, Plaintiff agreed to produce two documents containing communications with Defendant because they were inadvertently withheld.[7]

So because Plaintiff has agreed to produce a number of materials that were previously in dispute, the unresolved portions of Defendant's Motion now include documents that were withheld or redacted (1) between Plaintiff, Ocean Bank, and Greenberg Taurig[8], (2) communications between non-lawyers, such as Ivan and Maurice Kaufman, and (3) documents generally suspected to be not privileged but

---

[7]    To the extent Plaintiff has not already produced these documents that are no longer included on the privilege log, Plaintiff shall do so by 12:00 p.m., June 8, 2017.

[8]    Greenberg Taurig acted as joint counsel for both Plaintiff and Defendant.

10

that Plaintiff claims are privileged because they involve the rendition of legal advice from either in-house or outside counsel.

As for the first category of documents in dispute, Plaintiff refuses to produce the materials directed to third parties because – "pursuant to the parties' agreements" – they contain confidential information about investors and related entities that are not subject to disclosure. Thus, Plaintiff's response, consisting of only three sentences in this section of its brief, concedes that the documents are simply confidential and do not actually possess an independent basis for the attorney-client privilege.

Defendant takes issue with Plaintiff's position because the non-privileged documents were withheld on the basis of an agreement(s) that Defendant claims does not exist. And Defendant believes that any concerns that Plaintiff has about the disclosure of proprietary information that Plaintiff wishes to protect can adequately be protected by the Stipulated Protective Order. [D.E. 57]. Because the documents at issue are not protected by any privilege, Defendant moves to compel their production.

Defendant's argument is well taken. Plaintiff cites no evidence or authority in its response brief that there are any agreements between the parties that protect the disclosure of proprietary communications between Plaintiff, Ocean Bank, and Greenberg Taurig. And more importantly, on January 10, 2017, the Court entered a Stipulated Protective Order to govern the production of "proprietary or sensitive

11

business or personal information" between the parties.  [D.E. 57].  The purpose of the Stipulated Protective Order was to permit the production of confidential and proprietary documents with a designation of "CONFIDENTIAL."  Because the Stipulated Protective Order adequately protects the discovery of the information sought, Plaintiff has not provided any valid reason as to why the materials should not be disclosed, particularly in light of the fact that Plaintiff advances no argument that they are protected by the attorney-client privilege.  To this extent, Defendant's Motion is **GRANTED** and Plaintiff shall produce the aforementioned documents to Defendant in accordance with the terms of the Stipulated Protective Order by 12:00 p.m., June 8, 2017.

The second and third categories of documents in dispute concern communications between (1) non-lawyers – such as Maurice and Ivan Kaufman – and (2) documents involving Mr. Connolly.  To be clear, Maurice and Ivan Kaufman are Plaintiff's principal executives and decision-makers.  Ivan Kaufman's son, Maurice, was chosen by his father to oversee Plaintiff's day-to-day development of the underlying real estate project at issue in this case.  Ivan Kaufmann purportedly retained the key decision-making authority over all major decisions and was in charge of all critical negotiations.  For that reason, Defendant argues that conversations between non-lawyers – such as Maurice and Ivan Kaufman – are *prima facie* not privileged and must be produced accordingly.

With respect to documents relating to Mr. Connolly, Defendant suggests that Plaintiff has greatly exaggerated his role in Plaintiff's company as in-house counsel. At best, Defendant believes that Mr. Connolly plays a dual role (legal and business) with respect to the transactions at issue in this case and that he maintained substantial non-legal duties during the relevant time period. Because Mr. Connolly has been heavily involved with Plaintiff in several *business* matters, Defendant believes that it is highly suspicious that aside from forty emails discussing mundane topics, Plaintiff produced zero internal emails between July 1, 2016 and August 18, 2016.

In response to Defendant's arguments relating to non-lawyer communications, Plaintiff references several documents that illustrate how materials from non-lawyers are privileged, irrespective of the fact that a lawyer was omitted on the email. For example, Plaintiff contends that a July 11, 2016 email between the Kaufmans is privileged because it discusses an analysis provided earlier from outside counsel. Other examples included in Plaintiff's response include communications where the Kaufmans forwarded drafts or comments from outside counsel that relate to an analysis of the agreements being negotiated at the time. On this basis, Plaintiff argues that Defendant's Motion has no merit because the communications at issue all involve instances where non-lawyers are forwarding or commenting on legal advice received from counsel.

13

As for Defendant's arguments relating to Mr. Connolly, Plaintiff contends that unlike Defendant's corporation, Plaintiff retains an active in-house attorney that consistently provides legal advice concerning the relevant transactions, agreements, and disputes. Plaintiff relies primarily on Mr. Connolly's affidavit where he confirms that he provided legal advice to Plaintiff on the application and interpretation of the relevant agreements. And Mr. Connolly also asserted that he provided a great deal of additional legal advice concerning various disputes and impending litigation. Therefore, Plaintiff admits that – while nearly all of its internal communications were redacted or withheld between July 1, 2016 and August 18, 2016 – those privilege determinations are all proper and supported by Mr. Connolly's sworn affidavit.

After full consideration of the arguments presented, based on the existing record we must generally find that Plaintiff has met its *prima facie* burden of demonstrating that an attorney-client relationship existed for the documents in question. In doing so, Plaintiff (1) complied with the Court's prior Order, (2) filed a substantive response brief that explained how the documents at issue are privileged, and (3) provided a sworn affidavit that supports the level of legal advice provided. Though Defendant questions the veracity of Plaintiff's testimony, and in particular the scope of protection that any valid attorney-client privileged communications would have in this case, that distrust is not enough to deny the assertion of the

14

privilege at this stage. To the extent the Motion seeks wholesale denial of the privilege, the motion is **DENIED in PART** without prejudice.

On the other hand, the Court agrees with Defendant that the abundance of privilege invocations necessitates a more thorough review of some of the documents in question. This conclusion is reinforced when 93% of Plaintiff's internal communications – during the critical six week period between July 1 and August 18, 2016 – were withheld or redacted on the basis of the attorney-client privilege. As such, an *in camera* review is appropriate given the circumstances presented, particularly where corporate entities are subject to a heightened level of scrutiny when asserting the attorney-client privilege. *See Southern Bell Tel. & Tel. Co.,* 632 So. 2d at 1383. To this limited extent, Defendant's Motion is **GRANTED in PART**.

The Court is aware that Defendant requests the Court to conduct a full *in camera* review of every document that remains in dispute (which is now approximately 600 documents), or appoint a special master before the scheduled depositions in New York on June 13 and June 14. But, we find that the better and more realistic approach is to (1) maintain the current deposition schedule, (2) give the Defendant the choice of which initial documents should be reviewed immediately – from a sample of 10% of all the documents at issue – before the upcoming depositions, and (3) allow for further review if a record basis exists to question the validity of the privilege assertions for the remaining documents.

15

So, for instance, if the Court finds from this initial review that many of Plaintiff's documents were improperly redacted or withheld, further proceedings may be required, including potentially an evidentiary hearing on the privilege issue, which may require further relief.[9] Alternatively, if the Court's initial review reveals a valid assertion of privilege, further proceedings may become less necessary. Either way, especially given the time constraints involved, an initial sampling of these documents is warranted. And Defendant is in the best position to identify the documents it wishes to include in that initial review.

Finally, in Plaintiff's response brief, Plaintiff moves to compel Defendant to produce at least thirty-eight (38) emails containing communications with Defendant's managing director, Pasquale Guliano, that are purportedly not privileged. Although Mr. Guliano holds a law degree, Plaintiff believes that his role with Defendant was in a non-legal business capacity and therefore falls outside the purview of the attorney-client privilege.

Yet, Plaintiff's cross motion fails to comply with Local Rule 7.1(a)(3)(A) and include a certification that Plaintiff has in good faith conferred or attempted to confer with Defendant to resolve the discovery dispute. And Defendant argues in its reply that Plaintiff never attempted to meet and confer with counsel regarding any

---

[9]  This possibility is all the more reason for the now-scheduled depositions to proceed even though complete adjudication of the privilege disputes is not possible. Defendant may obtain relevant testimony through these depositions that supports, or undermines, Plaintiff's position on the privilege issues. The Court may rely on that testimony at a later stage of this process. And, of course, if it turns out that the Plaintiff's privilege assertions were unfounded, supplemental depositions may be Ordered (at Plaintiff's cost).

16

challenged entries in Defendant's privilege log. Because Plaintiff failed to provide the Court with any certification or argument in support thereof that it met and conferred with Defendant, Plaintiff's cross motion to compel is procedurally defective and is therefore **DENIED**.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

A. Defendant's Motion to Compel is **GRANTED in part** and **DENIED in part**. Plaintiff is compelled to immediately provide the Court with 60 documents in dispute from its privilege log for an *in camera* inspection. Defendant shall notify Plaintiff of the documents that it seeks immediate review by no later than June 8, 2017 at 12 p.m. and Plaintiff will provide those documents to the Court by no later than June 8, 2017 by 4:00 p.m. The motion is otherwise Denied without Prejudice.

B. Plaintiff's Cross-Motion to Compel is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of June, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

17