UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23573-Civ-COOKE/TORRES

AH BISCAYNE INVESTOR, LLC,

    Plaintiff,

v.

1st SUN PROPERTIES, LLC,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court on 1st Sun Properties, LLC's ("Defendant") motion to compel [D.E. 206] against AH Biscayne Investor, LLC ("Plaintiff"). Plaintiff responded to Defendant's motion on March 1, 2018 [D.E. 207] and Defendant replied on March 2, 2018. [D.E. 210]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

### *I.    BACKGROUND*

This action arises out of Plaintiff's alleged breach of its obligations concerning the parties' development of a real estate project in Miami, Florida (the "Biscayne Project"). The primary issue in this action is the parties' interpretation of their obligations under a Tenancy in Common Agreement ("TIC"), a First Side Letter

1

Amendment ("First Amendment"), and a Second Side Letter Amendment ("Second Amendment") governing the relationship between the parties and the future operations and management of the Biscayne Project. These three integrated documents collectively form the parties' entire agreement (the "Agreement"). Pursuant to the Agreement, Michael Belfonti or a Michael Belfonti affiliate[1] were entitled to exercise a call option that would allow Michael Belfonti or any Michael Belfonti affiliate to purchase additional membership interests in the Biscayne Project. The call option provided a mechanism and a deadline for the Belfonti-related entities (Defendant and Lambert Boston Associates, LLC) to acquire up to a defined percentage ownership interest, which once achieved entitled the Belfonti-related entities to share equally in all management decisions. Per the parties agreement, once Defendant or any other Michael Belfonti affiliate reached a threshold ownership amount, as defined in the TIC and amended by the First and Second Amendments, the date by which Michael Belfonti could exercise his all option would be extended through October 22, 2016 (the "Outside Call Option Date").

As of July 13, 2016, the Michael Belfonti affiliates (Defendant and Lambert Boston Associates, LLC) had not satisfied the defined percentage ownership interest for share management. As a result, the provisions of the Second Amendment executed by the parties on July 13, 2016 were aimed at defining the benchmarks

---

[1] An affiliate is a defined term in the TIC. Specifically, it means a legal entity that is controlled or is under the common control of Michael Belfonti. Defendant and Lambert Boston Associates, LLC were the two Michael Belfonti affiliates that acquired membership interests in the Biscayne Project.

needed to be satisfied in order to achieve the threshold ownership amount as so as to extend the Outside Call Option Date and allow Michael Belfonti and the Michael Belfonti affiliates additional time to achieve the defined percentage ownership interest for shared management. The Second Amendment provided that Defendant shall "be deemed to have satisfied" the threshold ownership amount upon certain "Required Conditions" being met and, thus, extend the Outside Call Option Date until October 22, 2016 in order to allow Michael Belfonti and his designated Michael Belfonti affiliates additional time to exercise the Call Option and achieve the defined percentage ownership interest for shared management.

There is allegedly no dispute by Plaintiff that Defendant and its affiliates "strictly satisfied" the "Required Conditions" in the Second Amendment. Nevertheless, Plaintiff purportedly refused to allow Michael Belfonti to exercise the Call Option and interfered with the ability of Michael Belfonti and his designated Michael Belfonti affiliate – the Defendant – to achieve the defined percentage ownership interest. Plaintiff's alleged refusal to allow the exercise of the call option by the extended Outside Call Option Date was purportedly an attempt to wrest control of the Biscayne Project from the Michael Belfonti affiliates (Defendant and Lambert Boston Associates, LLC). Accordingly, (1) the Second Amendment, (2) the negotiations leading up to its execution, and (3) the parties' intent in entering into it are central issues in this action.

## II.     ANALYSIS

Defendant's motion seeks to compel Plaintiff to (1) cooperate in the scheduling of four depositions, (2) immediately produce documents in response to Defendant's fifth request for production, and (3) serve a proper privilege log by a certain date in compliance with the Local and Federal Rules. We will discuss the parties' arguments in turn.

### A. *Whether Plaintiff failed to cooperate with depositions*

Defendant's first argument is that Plaintiff has failed to cooperate in scheduling four depositions. On January 22, 2018, the Court issued a revised Scheduling Order and extended the discovery period in this case until May 18, 2018. [D.E. 183]. On the same date, Defendant requested from Plaintiff the dates for deposing four fact witnesses. Since January 22, 2018, Defendant has engaged in numerous emails and telephone conversations to obtain the deposition dates, but has been unsuccessful due to Plaintiff's alleged lack of cooperation.[2] Defendant argues that Plaintiff has failed to provide any dates for the requested deponents – except for Mr. Thornton[3] – and that the Court must compel these depositions given the upcoming discovery cutoff.

---

[2]     The four proposed deponents are Fred Weber, William O'Connor, William Thornton, and Mal Serure.

[3]     In its reply brief, Defendant explains that Plaintiff has now agreed to produce three of the deponents in April, but that these dates are insufficient because Defendant should not have to wait until April to commence discovery depositions.

Defendant's motion is unpersuasive because we have already addressed this issue. On February 20, 2018, we explained that "Plaintiff is not obligated to produce any individuals without subpoena," and that "Defendant may subpoena any necessary witness for deposition under Rule 45, so long as it confers 14 days' notice to the witness and Plaintiff." [D.E. 199]. We also directed the parties to cooperate in the scheduling of future depositions by agreement. And, if no agreement was reached, we stated that the Court would enforce a timely served subpoena that complies with the Local Rules. It appears that Defendant has overlooked the contours of that Order as there is no indication in Defendant's motion that a subpoena was issued on any of the four deponents. Because we have already explained how Defendant can obtain the relief sought (and could not have been clearer on that point), there is nothing more to consider with respect to Defendant's motion on this issue.[4] Therefore, Defendant's motion to compel the scheduling of four depositions is **DENIED**.

### B. *Whether Plaintiff failed to timely produce documents*

Defendant's second argument is that Plaintiff has failed to produce *any* documents in response to Defendant's fifth request for production that was served on January 23, 2018 – the day after the entry of the Court's revised Scheduling Order. [D.E. 183]. On February 22, 2018, Plaintiff timely served its objections and responses to Defendant's fifth request for production of documents. While asserting

---

[4] If Plaintiff does not agree to produce the witnesses at issue in a reasonable time period, Defendant can and should subpoena them. The Court will not babysit this process.

5

both general and specific objections, Plaintiff agreed to produce responsive, non-privileged documents during the week of March 11, 2018. Upon receipt of Plaintiff's response on February 22, 2018, Defendant requested the immediate production of the items requested. Defendant claims that the documents are needed to continue with deposition discovery in this case and that Plaintiff must be compelled to comply with its discovery obligations.

Defendant's motion is not without merit. During a February 23, 2018 conference between the parties, Plaintiff explained that it would produce non-privileged responsive documents to all 39 requests on or before March 16, 2018. However, Plaintiff has failed to persuasively explain why it takes approximately 7 weeks to produce *any* documents. At the very least, Plaintiff could have produced documents on a rolling basis and agreed upon a date with Defendant for the productions to be completed sometime in March. Because Plaintiff has failed to produce any documents, Plaintiff is ordered to complete its production of documents within seven (7) business days from the date of this Order. Accordingly, Defendant's motion is **GRANTED**.

### C. *Whether Plaintiff failed to serve a timely privilege log*

The final dispute between the parties is whether Plaintiff failed to serve a timely privilege log as required under the Local and Federal Rules. Plaintiff claims that it cannot commit to a specific date to serve a privilege log until *after* Plaintiff's counsel reviews the documents that its client intends to produce on March 16, 2018.

Defendant finds this response unacceptable because it prejudices Defendant with an inexcusable delay caused by Plaintiff's refusal to cooperate with the Court's Scheduling Order.

Plaintiff argues that the reason for the delay in the production of a privilege log is because the parties dispute its appropriate scope. Plaintiff also contends that there is an unknown universe of responsive documents – which Plaintiff's counsel anticipates to receive from its client next week – and that Plaintiff cannot estimate at this time how long it will take to compile, review, and produce the privilege log. Therefore, Plaintiff concludes that it will provide a privilege log within a reasonable period of time after Plaintiff completes its production of documents.

Local Rule 26.1(g)(3)(c) requires that a party who withholds documents on the basis of privilege to identify "'each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed.'" *Anderson v. Branch Banking & Tr. Co.*, 2015 WL 2339470, at *2 (S.D. Fla. May 14, 2015) (quoting *NIACCF, Inc. v. Cold Stone Creamery, Inc.,* 2014 WL 4545918, at *5 (S.D. Fla. Sept. 12, 2014)). A proper privilege log should therefore contain the following information for each redacted or withheld document: "(1) the name and job title or capacity of the author of the document; (2) the name and job title or capacity of each recipient of the document; (3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the

document; (5) the subject matter addressed in the document; (6) the purpose(s) for which it was prepared or communicated; and (7) the specific basis for the claim that it is privileged." *Anderson*, 2015 WL 2339470, at *2 (citing *NIACCF, Inc.,* 2014 WL 4545918, at *5).

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005). And "[a] survey of district court discovery rulings reveals wide divergence on whether the privilege log must be produced at the time that the written response is due pursuant to Rule 34 to preserve the privilege." *Id.* But, the Ninth Circuit has provided a thoughtful analysis of the issue and held that a failure to produce a privilege log within Rule 34's 30-day time limit does not result in a *per se* waiver of a privilege:

> [U]sing the 30–day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142,

1149 (9th Cir. 2005). District courts have widely adopted this approach in the Eleventh Circuit. So, considering that a claim for privilege has been asserted in many of the discovery responses, Defendant's position is well taken. *See, e.g.*, *Universal City*, 230 F.R.D. at 695; *Mauro v. Alldredge,* 2013 WL 3866531, at *4 (M.D. Fla. July 25, 2013) ("Plaintiffs have failed to support their objections with evidence or analysis and while they generally assert privilege, they have failed to submit a privilege log.").

Given the circumstances presented, there is reason to compel a compliant privilege log within fourteen (14) business days from the date of this Order. That is a sufficient period of time to review this final batch of documents and prepare the privilege log. To this extent, the motion is **GRANTED in part**.

We also note that – after Plaintiff has completed its document productions – an amended discovery response should make clear whether Plaintiff relied upon a privilege and actually withheld any documents. To the extent Plaintiff did not do so then an amended response should so clarify, in which case no privilege log is required. But if documents are in fact withheld a privilege log must be served, at least for those responsive documents withheld from the production. *See Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, at *2 (S.D. Fla. Nov. 19, 2008) (finding that defendants "may not claim that all of Plaintiff's discovery requests are privileged and non-discoverable without providing a privilege log in accordance with the Federal and Local Rules."); *see also Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide*

9

*Mut. Fire Ins. Co.*, 2011 WL 3841557, at *8 (M.D. Fla. Aug. 29, 2011) ("[Defendant] also notes that some of the information sought by [plaintiff] invades the attorney-client privilege. If this is the case, [defendant] is *obligated* to provide [plaintiff] with a privilege log setting forth this information. The party invoking the privilege bears the burden of proof.") (emphasis in original).[5]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

A. Defendant's motion to compel the scheduling of four depositions is **DENIED**.

B. Defendant's motion to compel the production of documents is **GRANTED in part**. Plaintiff is compelled to complete its production of documents within seven (7) business days from the date of this Order. To this extent, Defendant's motion is **GRANTED**.

C. Defendant's motion to compel a privilege log is **GRANTED in part**. Plaintiff shall produce a compliant privilege log within fourteen (14) business days from the date of this Order.

---

[5] In many of Plaintiff's discovery responses, Plaintiff objects on the basis of the attorney-client privilege or the work product doctrine. Plaintiff needs to clarify which privilege is at issue in its amended response and be specific. *See In re Pimenta*, 942 F. Supp. 2d 1282, 1290 (S.D. Fla. 2013) ("Blanket assertions of privilege before a district court are usually unacceptable."); *Maryland Cas. Co. v. Shreejee Ni Pedhi's, Inc.*, 2013 WL 3353319, at *4 (M.D. Fla. July 2, 2013) (finding that the objecting party "has the burden to demonstrate the work product doctrine applies and failed to make its work product objection with any specificity.").

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of March, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge